## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

_____

| | |
|---|---|
| RAYNELL WILLIAMS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | )    No. 14-cv-2767-JDT-tmp |
| CITY OF MEMPHIS, et al., | ) |
| | ) |
|     Defendants. | ) |
| | ) |

_____

## REPORT AND RECOMMENDATION
_____

On October 1, 2014, plaintiff Raynell Williams filed a *pro se* complaint against numerous defendants alleging violations of 42 U.S.C. § 1983, accompanied by an application to proceed *in forma pauperis*. (ECF Nos. 1, 2, 5.) The court granted Williams's motion to proceed *in forma pauperis*. Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. For the reasons below, it is recommended that Williams's complaint be dismissed.

### I.    PROPOSED FINDINGS OF FACT

Raynell Williams's hand-written complaint consists of 264 enumerated paragraphs and lists approximately 50 defendants, nearly all of whom are identified by only their first or last

names.  These defendants include: the City of Memphis ("City"); Mental Health Officers Smith, Cunningham, and King; Shelby County Sheriff Bill Oldham; Intake Officer Young; Federal Bureau of Investigation ("FBI") Special Agent McIntosh and other unnamed FBI Special Agents; Memphis Police Department ("MPD") Officers James Harvell, Rogers, McCord, Bing, Joyner, Connor, Gooch, Lemmons, Daugherty, Winsett, Toles, Brantley, Porter, and Walter; MPD Sergeants Brown, Banks, and Pete; University of Tennessee Health Science Center ("UT") Officers Walsh and Sims; Memphis Fire Department Station No. 8; United States Postal Service ("USPS") Clerks Joyce, Gloria, Vicki, Curtis, and Hopkins; *The Commercial Appeal* newspaper; an unnamed local sports radio station; Southwest Tennessee Community College ("STCC") Officer Carson; the Memphis Area Transit Authority ("MATA") bus system; Chief Moore; Lieutenant Benn; Officer Steward; Officer Warren; Commissioner Miller-Herron and her assistants Ross and Yvonne; and Shelby County Sheriff's Deputies Adams, Shaw, Jones, and Banks.

Although the complaint is difficult to decipher, it appears that Williams alleges the FBI and other law enforcement agencies have continuously harassed him by placing him on a terrorist watch list, mishandling his mail, interfering with his freedom of speech, intimidating him by "surveilling [his] movements and thoughts from brain imagining," and implanting chips inside his

leg (after he had sustained a gunshot wound) so that his movements could be tracked via the Global Positioning System ("GPS"). (Compl. at 1-3, 20-22, 25.) More specifically, Williams alleges that MPD officers harassed him while he was leaving the Cornelia Crenshaw Public Library on September 21, 2013. (Compl. at 1-2.) He claims that MPD Officer Harvell would not allow him access to the library computers, and then searched through his backpack while Williams was detained in a squad car. Williams alleges that as he was exiting the library, MPD Officer Toles grabbed Williams's arm, twisted it, and forcefully shoved him into a wall. (Compl. at 1.) Officer Harvell then drove away from the scene with Williams's backpack and did not return it for two days. (Compl. at 1-2.) Williams claims he was falsely arrested and falsely convicted of trespassing and disorderly conduct as a result of this incident.[1] (Compl. at 2-3.)

Williams alleges that on October 12, 2013, while he was inside the UT library, a librarian approached him and asked to

---

[1]According to an affidavit of complaint and arrest warrant attached as an exhibit to Williams's complaint, Williams was arrested on September 21, 2013, at the public library. The arrest was based on a complaint by a library assistant that Williams had been previously instructed by the library staff not to return to the library because he had been seen viewing pornography on the library computer the week before. When the library staff asked Williams to leave, he "started cursing and talking loud. Officers approached [Williams] and he [started] talking loud and as we were [escorting him] out he threw his newspaper at the [library assistant]." (ECF No. 1-5 at 1.)

make a copy of his identification card. Williams refused and left the library. (Compl. at 2.) He claims that based on a complaint from the librarian, UT Officer Walsh stopped Williams outside of the library and tried to take his photograph in order to post it to "discredit [*sic*] defame and endanger" him. (Compl. at 3.) Furthermore, Williams claims that Officer Walsh threatened to jail him if he refused to have his photograph taken. (Compl. at 3.) He claims that UT Officer Sims then showed up and was concerned that Williams's backpack contained a bomb, and as a result the FBI placed him on a "terrorist watch list." (Compl. at 3.) William alleges that on October 31, 2013, while he was at the STCC library, STCC Officer Carson asked Williams for his state identification card and illegally surveilled him from a car. (Compl. at 4.)

Williams claims that on January 17, 2014, MPD Officers Bing and Connor harassed him by pretending to run over Williams with their squad car. (Compl. at 5.) Next, Williams alleges that on February 6, 2014, at St. John's Baptist Church, MPD Officers Bing and Joyner instructed Williams to "show them his teeth." (Compl. at 4.) Williams claims that on February 15, 2014, MPD Officer Rogers wrongly cited him for asking someone for money and forced Williams to sign the citation. (Compl. at 5-6.) Williams alleges that on March 5, 2014, MPD Officer Rogers wrongly accused him of trespassing and harassment. (Compl. at

5.)  On April 1, 2014, Williams claims that MPD Officer Lemmons unlawfully searched him and asked for his identification. (Compl. at 6.)  Williams claims that Officer Lemmons, along with MPD Officer Winsett, wrongly cited him for jaywalking and obstructing traffic.  (Compl. at 6-7.)

Next, on April 7, 2014, Williams alleges that MPD Officers McCord, Bing, Daugherty, and Gooch raced after him with their squad cars, jumped out and approached him, placed him in handcuffs, and charged him with attempted carjacking.[2]  (Compl. at 7.)  The officers took Williams to jail, at which time Williams claims the intake officer, Officer Young, falsely arrested and threatened him.  (Compl. at 8, 10.)  Williams alleges that Officers Rogers and Walter then "dragged" him into court.  (Compl. at 9.)  Williams alleges that while he was waiting to be released from jail, Officer Stewart went through his cell phone without permission.  (Compl. at 17.)

---

[2]According to an affidavit of complaint and arrest warrant attached as an exhibit to Williams's complaint, Williams was arrested on April 7, 2014, by the MPD for attempted carjacking. (ECF No. 1-5 at 3.)  The arrest was based on a complaint by a Memphis, Light, Gas & Water ("MLGW") security officer who advised that he was sitting inside his company vehicle when Williams approached and "began violently yanking on the handle, attempting to gain entry into the vehicle."  When the officers attempted to detain Williams, "he began to yell at officers and caused such a disturbance [that] motorists were stopping to observe."  Williams was then handcuffed and transported to jail. A judgment attached to the complaint indicates that on April 24, 2014, Williams was convicted of criminal attempt: burglary of a motor vehicle and sentenced to thirty days confinement.  (ECF No. 1-5 at 5.)

Additionally, Williams alleges that Sheriff's Deputies Adams, Shaw, Jones, and Banks planted surveillance chips in his leg after Williams sustained a gunshot wound and illegally tracked him via GPS. (Compl. at 20-22.) He also states that FBI detective McIntosh conducted unwarranted surveillance on him. (Compl. at 24.)

Williams alleges that Mental Health Officer King conducted covert mental evaluations on him and placed him in the mental health pod of the jail against his will. (Compl. at 10-11.) Williams claims that while he was in jail, Sergeant Brown moved him to the general population floor against his will, and Officers Brantley denied him access to the courts. (Compl. at 12-13.) Williams claims that while in the mental health pod of the jail, "Ms. Becky," a jail employee, conducted an unusual second round inspection of his pod, which Williams claims was related to the FBI's surveillance of him. (Compl. at 14.) Williams alleges that Lieutenant Benn, who also worked in the mental health pod of the jail, ignored Williams's concerns with being transferred from the mental health pod and denied him protective custody. (Compl. at 16.)

Williams alleges that he sent various letters on June 9, 2014, through the USPS, and that USPS Clerks Vicki, Curtis, Tamika Hopkins, Joyce, and Gloria surreptitiously opened, read, and shared the letters with others, and ultimately prevented his

letters from reaching the intended recipient, the Sixth Circuit Court of Appeals. (Compl. at 24.) Williams claims that on July 18, 2014, a MATA bus attempted to run him over. (Compl. at 19.) Finally, he alleges that *The Commercial Appeal* newspaper mentioned his name in the sports section and that it gained information about Williams's family through "covert operations." (Compl. at 19.)

## II. PROPOSED CONCLUSIONS OF LAW

### A. Standard of Review

The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action:

(i) is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B)(i-iii). In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rule Civil Procedure 12(b)(6), as stated in Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegation in [the] complaint to determine if they plausibly suggest an

entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 681). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegation." Iqbal, 556 U.S. at 679; see also Twombly, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) (affirming dismissal of pro se complaint and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975)); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003) (affirming

*sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating "[n]either this court nor the district court is required to create Payne's claim for her."); cf. Pliler v. Ford, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to pro se litigants."); Young Bok Song v. Gipson, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of pro se litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

**B.   Claims Against Municipalities**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). Williams has failed to state a claim under § 1983 against the City, Sheriff Oldham, and city and county employees in their official capacities. It is well-established that a suit against a person in his or her official capacity is construed as a suit against the

governmental entity which he or she represents.  See Alkire v. Irving, 330 F.3d 802, 810 (6th Cir. 2003) ("While '[p]ersonal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent.") (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985)).  Government entities are only liable under § 1983 when "the execution of a government policy or custom . . . inflicts the injury."  Rhodes v. City of Chattanooga, Tenn., No. 1:04-CV-045, 2005 WL 2647921, at *5 (E.D. Tenn. 2005).  A complainant must show that the city "through its deliberate conduct, was the moving force behind the alleged deprivation of . . . rights secured under the United States Constitution."  Id. (quoting Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 387, 403 (1997)) (internal quotation marks omitted).  A complainant must also show that his injuries resulted directly from a city's policy or custom.  Id. As the Sixth Circuit has explained:

> The Supreme Court has approved municipal liability based on § 1983 when "the [municipal] action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or where such actions emanate from informal governmental custom.  In other words, the constitutional violation must have sprung from "official policy" in one form or another.  As such, local government units cannot be held liable mechanically for their employees' actions under a

- 10 -

respondeat superior theory. The plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." He "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."

Alman v. Reed, 703 F.3d 887, 902-03 (6th Cir. 2013) (internal citations omitted); see also Garner v. Memphis Police Dep't, 8 F.3d 358, 364 (6th Cir. 1993) ("[T]o satisfy the Monell requirements, a plaintiff must identify the policy, connect the policy to the [government entity] itself and show that the particular injury was incurred because of the execution of that policy").

Williams has alleged no facts to plausibly show that the City (or Shelby County) has a custom or policy that was the moving force behind any alleged constitutional violations. Therefore, it is recommended that the § 1983 claims against the City and all city and county employees in their official capacities be dismissed. See Matthews v. City of Collierville, No. 13-2703-JDT-TMP, 2014 WL 69127, at *6 (W.D. Tenn. Jan. 8, 2014) (dismissing city and its police officers in their official capacities from suit).

C.   Claims Against Private Parties

"A § 1983 plaintiff may not sue purely private parties." Brotherton v. Cleveland, 173 F.3d 552, 567 (6th Cir. 1999).

Thus, "[i]n order to be subject to suit under § 1983, [a] defendant's actions must be fairly attributable to the state." Collyer v. Darling, 98 F.3d 211, 231-32 (6th Cir. 1997). Because *The Commercial Appeal* and the local sports radio station are private parties, Williams cannot bring a § 1983 claim against these defendants. See Hines King v. Baptist Mem'l Hosp. Memphis, No. 13-3004-JDT-TMP, 2014 WL 223457, at *4 (W.D. Tenn. Jan. 21, 2014) (dismissing § 1983 claims against private party hospital and its employees).

## D.   Claims Against Federal Defendants

Regarding the federal defendants named in Williams's complaint, federal agencies and employees act under color of federal law and, therefore, are not subject to suit under § 1983. Smith v. Breen, No. 09-2770-STA-tmp, 2010 WL 2557447, at *7 n.14 (W.D. Tenn. June 21, 2010); see also Billings v. United States, 57 F.3d 797, 801 (9th Cir. 1995); Banks v. United States, No. 10 Civ. 6613(GBD)(GWG), 2011 WL 4100454, at *7 (S.D.N.Y. Sept. 15, 2011) ("Federal employees act under the color of federal law, not state law, however, and therefore cannot be subject to liability under § 1983."); Huertas v. United States, No. Civ. 04-3361(RBK), 2005 WL 1719143, at *3 (D.N.J. July 21, 2005). The court declines to construe Williams's claims as arising under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971),

which provides a right of action against federal employees who violate an individual's rights under the Constitution. See Mitchell v. Chapman, 343 F.3d 811, 825 (6th Cir. 2003) ("Mitchell did not allege a Bivens claim . . .; rather, he averred claims pursuant to Section 1983. There lacks any authority in support of Mitchell's blanket proposition that a court must convert a § 1983 claim asserted against federal officials to one asserting Bivens violations."). Therefore, it is recommended that all claims against federal defendants, including FBI Special Agents and USPS employees, be dismissed.

**E. Claims Against UT and STCC Officers**

The official capacity claims against UT Officers Walsh and Sims and STCC Officer Carson are considered to be claims against the office the defendants represent, in this case, the State of Tennessee. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the office."). Generally speaking, the state has absolute Eleventh Amendment immunity from suits for damages. Edelman v. Jordan, 415 U.S. 651, 663 (1974). Members of Tennessee's university system are entitled to the state's Eleventh Amendment immunity. See Gross v. Univ. of Tenn., 620 F.2d 109, 110 (6th Cir. 1980); Henderson v. Sw. Tenn. Cmty. Coll., 282 F. Supp. 2d 804, 807 (W.D. Tenn. 2003). To the

extent these officers are sued in their official capacity for damages, they are absolutely immune from liability. Kentucky v. Graham, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."); Boone v. Kentucky, 72 F. App'x 306, 307 (6th Cir. 2003) ("Boone's request for monetary relief against the prosecutors in their official capacities is deemed to be a suit against the state and also barred by the Eleventh Amendment."). Although the Eleventh Amendment does not preclude official capacity claims for prospective injunctive relief to end continuing violations of federal law, see Ex Parte Young, 209 U.S. 123 (1908), the allegations against these officers relate solely to their past conduct, and the complaint does not seek injunctive relief from these defendants. Therefore, the official capacity claims against UT Officers Walsh and Sims and STCC Officer Carson should be dismissed.

## F.   All Claims Are Frivolous

As a final matter, the court finds that Williams has failed to state any legal basis for a § 1983 claim against any of the defendants. "[A] district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of

merit, or no longer open to discussion." Apple v. Glenn, 183
F.3d 477, 479 (6th Cir. 1999). The allegations in Williams's
complaint, which the court finds to be implausible, frivolous,
and devoid of merit, are insufficient to establish subject
matter jurisdiction. Accordingly, Williams's entire complaint
should also be dismissed for lack of subject matter
jurisdiction.[3] See Lacy v. Apple, No. 1:12-CV-867, 2012 WL
5471780, at *2 (W.D. Mich. Oct. 5, 2012), report and
recommendation adopted, 2012 WL 5471778 (W.D. Mich. Nov. 9,
2012); Darden v. The Union, No. 3:08CV-64-S, 2008 WL 373696, at
*2 (W.D. Ky. Feb. 8, 2008).

### III. RECOMMENDATION

For the above reasons, it is recommended that Williams's
complaint be dismissed.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

February 5, 2015
Date

---

[3]This court has previously dismissed two other actions brought by
Williams. See Williams v. Oldham, No. 13-2373-JDT-tmp, 2014 WL
1237698, at *3-4 (W.D. Tenn. Mar. 25, 2014) (dismissing
complaint because causes of action under § 1983 were time-
barred); Williams v. City of Memphis, Tenn., No. 13-2372-JDT-
tmp, 2013 WL 5204551, at *1 (W.D. Tenn. Sept. 16, 2013) (citing
Denton v. Hernandez, 504 U.S. 25, 32-33 (1992)) (dismissing
Williams's complaint because the allegations were "clearly
baseless, fanciful, fantastic, and delusional").

**NOTICE**

WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.